1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11    BRIAN J.,                                    | Case No.: 23-cv-799-DDL |
| 12                              Plaintiff,          | **ORDER GRANTING IN PART AND** |
| 13    v.                                            | **DENYING IN PART PLAINTIFF'S** |
|                                                     | **MOTION FOR SUMMARY** |
| 14    MARTIN O'MALLEY, Commissioner of              | **JUDGMENT** |
|        Social Security,                             | |
| 15                                                  | **[Dkt. No. 13]** |
| 16                              Defendant.          | |

17

18          On May 2, 2023, Plaintiff Brian J. ("Plaintiff" or "claimant") filed a Complaint

19  challenging the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of

20  Social Security ("Commissioner"), denying Plaintiff's application for Social Security

21  Disability Insurance and Supplemental Security Income benefits.[1]  Dkt. No. 1.  Before the

22  Court is Plaintiff's Motion for Summary Judgment ("Motion") in which Plaintiff seeks

23  reversal of the Commissioner's decision and remand of the case for payment of benefits.

24  Dkt. No. 13.   The Commissioner opposes the Motion.   Dkt. No. 15.   After carefully

25  considering the parties' briefing, the certified administrative record ("AR") and the

26

27  ――――――――――――

28  [1]      Pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley is substituted for Kilolo Kijakazi.

1

applicable law, the Court concludes that the Administrative Law Judge ("ALJ") properly declined to consider Plaintiff's Veterans Affairs ("VA") disability rating.  However, the ALJ did not provide clear and convincing reasons to justify discounting Plaintiff's subjective testimony regarding the intensity, persistence, and limiting effects of his headaches and associated symptoms as required by Ninth Circuit authority.  As a result, substantial evidence does not support the Commissioner's final decision.  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion, and **REMANDS** the matter to the Social Security Administration ("Administration") for further consideration of the record as described herein.

## I.

## BACKGROUND

### A.    Plaintiff's Application for Disability Benefits

Plaintiff is a 54-year-old male who alleges disability beginning on July 1, 2020, due to the following conditions: headaches; cervical stenosis, degenerative disc; lumbar stenosis, degenerative disc; carpal tunnel syndrome of both wrists/hands; pain in both arms; pain in both legs and feet; tears in right rotator cuff; pain in left shoulder; vertigo; and recent strokes.  AR 72.[2]  On April 28, 2021, Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433. *Id*. at 72; *see id*. at 198-99.  Plaintiff's application was initially denied on June 8, 2021, and again upon reconsideration on August 4, 2021.  *Id*. at 71-103.

### B.    The Administrative Hearing

Plaintiff requested a hearing before an ALJ, which took place on February 3, 2022. AR 20.  At the hearing, Plaintiff testified regarding his strokes, dizziness, and headache symptoms, including the frequency, intensity, treatments, and side effects he experiences. Plaintiff explained:

---

[2]    The Court adopts the parties' pagination of the AR.  All other record citations are to the page numbers generated by the Court's CM/ECF system.

> [I]n May of 2020, I had several strokes and after the strokes, I went back to work for about 30 days and due to the dizziness and the safety factor of what I was doing, I was unable to continue on with all the other injuries.
>
> [. . .]
>
> Being in the sun, it — it exacerbates the headaches and the sense of — vertigo and dizziness . . . .

AR 48.  Plaintiff further testified that remaining out of the sun does not cause the headaches to cease.  *Id*.

Plaintiff testified that he experienced headaches while he was previously working.  AR 59.  Plaintiff estimated that during that time, he experienced "two or three a week" and stated "[t]hey were brief, sometimes just a few hours."  AR 59-60.  However, Plaintiff explained his belief that they were controlled at that time because he "was already taking pain medicine for other things [and] . . . they just never got to the level of intensity."  *Id*. at 60.  In contrast, Plaintiff described the frequency of the headaches and dizziness at the time of the hearing as follows:

> The headaches are frequent and three or four times a week.  The dizziness is constant — well, I shouldn't say constant, but every time I get up from a seated position, you know, I go through a dizzy spell.
>
> [. . .]
>
> I always feel some level of dizziness, but right when I first stand up, it's more intense, so that lasts . . . about 5 to 20 seconds.

*Id*. at 49, 51-52.  Plaintiff testified that he has experienced dizziness "[e]ver since the strokes," and that his headaches began while he was in the military where he was "exposed to some blasts."  *Id*. at 50.  Plaintiff stated he "always had intermittent headaches since then, but they have just become more intense over the past few years."  *Id*.  Plaintiff
/ / /

23-cv-799-DDL

attributed the increased intensity of the headaches to the onset of the strokes as well as "the other injuries." *Id*.; *see* AR 60.

In terms of treatment, Plaintiff testified that "the nerve clinic" is monitoring him for "the strokes and the headaches," and for a brain aneurysm. *Id*. at 50-51. Plaintiff also testified regarding medications he takes for his headaches.

> I take a collection of three medications during the time of the — the migraines, and one is Ubrelvy, Tylenol, and — and Benadryl, which all have their separate side effects which basically makes me just so tired that I have to go lay down.

*Id*. at 52. When asked how long he must lie down, Plaintiff stated, "[i]t could be an hour or two or for the rest of the day, in some cases." *Id*. When asked, Plaintiff testified that he is unable to function or do household chores when he has a headache, and that "with the headache and the medication, I basically have to go rest at that point." *Id*. at 53. Plaintiff explained that in a typical week, "[m]aybe on[e] or tw[o] of those episodes" would require him to rest for the entire day. *Id*.

In terms of intensity, Plaintiff described the headaches as "powerful." AR 52. When asked what symptoms Plaintiff experienced beyond the headache pain and how the headaches affect him, Plaintiff stated:

> So when the headaches are starting to come, . . . my vision gets blurred, and then I know the headaches are coming, so I try to cut it off by taking the pain medicine . . . as a pre-emptive strike to slow down the pain, to slow down the headache, but it doesn't often work.
>
> [. . .]
>
> [T]he blurry vision and — and the balance . . . seems to be affected when the headaches are strong, as well.

*Id*. at 52-53. When asked to explain how the headaches affect his balance, Plaintiff responded:

/ / /

/ / /

> It's just unsteady already.  It's unsteady already with the . . . left
> leg and foot problems and then . . . when the dizziness kicks in,
> it's even worse.

*Id*. at 53.  Additionally, Plaintiff provided testimony that he "had troubles focusing," and that his focus-related issues worsened "after the strokes."  *Id*. at 57.

When asked about his coursework at Mesa Community College in 2021, Plaintiff testified that he enrolled in three online classes—physics, biology, and political science—as part of a plan to pursue a career in radiology.  *Id*. at 57-58.  Plaintiff stated that "when it became [sic] classes that were related to memorizing, I did not pass those classes."  *Id*. at 57.  Specifically, Plaintiff stated that he "[j]ust barely" passed physics and political science and did not pass biology.  With respect to his performance in biology, Plaintiff stated:

> [T]he biology class was basically . . . a memory-based course,
> and I could not recall — I mean, I — I'd study something for
> hours and then an hour later, I'd look at it like I'd never seen it
> before, and so that became an issue . . . at testing every time.

*Id*. at 58.  Plaintiff also stated that he took "a couple of classes before those classes" in the earlier part of 2021, and that he managed to pass those classes because they "were not memory-based courses," and were "open book courses."  *Id*. at 59.

## C.   Summary of ALJ's Findings

On May 4, 2022, the ALJ issued a written decision denying Plaintiff's claims.  The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a)(4).[3]  AR 20-32.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability.  *Id*. at 22.

---

[3]   First, the ALJ must determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  Second, the ALJ must determine whether the claimant suffers from a "severe" impairment within the meaning of the regulations.  *Id*. § 404.1520(a)(4)(ii).  Third, if the claimant suffers from a severe impairment, the ALJ must determine whether that impairment meets or is medically equal to one of the

At step two, the ALJ found Plaintiff had the following severe impairments which significantly limited Plaintiff's ability to perform basic work activities:

> [D]egenerative disc disease/degenerative joint disease of the lumbar and cervical spines; right shoulder AC joint tear, status post-surgical repair in August 2021; osteoarthritis of the bilateral wrists, left worse than right; bilateral carpal tunnel syndrome; status-post left knee replacement in 2015; status-post leg and foot [open reductions and internal fixations] in 2008 due to a motor vehicle accident, with residual left foot and ankle tendonitis/plantar fasciitis issues, and recent left foot surgery; migraines; vestibular system disorder; stroke in May 2020; and obesity.

AR 22. The ALJ also found that with respect to Plaintiff's other alleged medically determinable impairments of obstructive sleep apnea and hyperlipidemia, there was insufficient evidence in the record to indicate more than a minimal effect on Plaintiff's ability to perform work activity. *Id.* at 23.

At step two, the ALJ also considered the severity of Plaintiff's mental impairments pursuant to "paragraph B" criteria. AR 23. The ALJ determined that Plaintiff had a mild limitation in understanding, remembering, and applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting and managing oneself. *Id.* Based on the findings that Plaintiff's medically determinable mental impairments caused only mild limitations in each of the four functional areas, and the finding that the evidence does not otherwise indicate more than a minimal limitation in Plaintiff's ability to do basic work activities, the ALJ

---

impairments identified in the regulations' Listing of Impairments. *Id.* § 404.1520(a)(4)(iii). Fourth, if the impairment does not meet or equal a listing, the ALJ must determine the claimant's residual functional capacity ("RFC") based on all impairments (including those that are not severe) and whether that RFC is sufficient for the claimant to perform his or her past relevant work. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ must determine whether the claimant can make an adjustment to other work based on his or her RFC. *Id.* § 404.1520(a)(4)(v).

1  concluded that Plaintiff's medically determinable mental impairments of anxiety disorder

2  and a cognitive disorder associated with Plaintiff's history of stroke were non-severe. *Id*.

3  at 24.  Notwithstanding the finding that Plaintiff's mental impairments were non-severe,

4  the ALJ stated:

5          [T]he undersigned has nonetheless included a limitation in the
           residual functional capacity limiting the claimant to only detailed
6          work.  This is in keeping with the regulatory requirement that all
           impairments, both severe and non-severe, must be considered in
7          formulating the residual functional capacity.  The claimant
           complains of memory problems, but as noted above, there is little
8          support for the idea that his alleged anxiety and cognitive
           disorders qualify as severe impairments.  Nonetheless, in light of
9          the claimant's various impairments, including his history of
           headaches (perhaps related to a distant [traumatic brain injury]),
10         a stroke, a vestibular disorder, and the effects of his medication,
           all of which are discussed in more detail below, the undersigned
11         has included the assessed restriction to only detailed task work.

14  *Id*.

15         At step three, the ALJ found Plaintiff did not have an impairment or combination of

16  impairments that met or medically equaled the severity of those impairments included in

17  the Commissioner's Listing of Impairments.  AR 25.

18         Before proceeding to step four, the ALJ determined Plaintiff's RFC, as follows:

19         [C]laimant has the residual functional capacity to perform light
           work[4] as defined in 20 CFR 404.1567(b) except: he can
20         occasionally push/pull with his dominant right upper extremity,
           and can occasional[ly] push/pull or operate foot pedals with his
21         bilateral lower extremities; he cannot climb ladders, ropes, or
           scaffolding, or crawl, but he can occasionally perform all other
22         postural activities; with his dominant right upper extremity he
23         can occasionally perform reaching in front and laterally at or

---

26  [4]     "Light work" is defined as work that "involves lifting no more than 20 pounds at a
27  time with frequent lifting or carrying of objects weighing up to 10 pounds," and which
    "requires a good deal of walking or standing, or . . . involves sitting most of the time with
28  some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

above shoulder level (including overhead), but he is unrestricted in reaching below shoulder level; he can frequently handle, finger and feel with his bilateral upper extremities; he must avoid concentrated exposure to vibrations and extreme cold; he must avoid all work around hazards such as unprotected heights or around dangerous moving machinery; he cannot work outdoors; and he is limited to doing up to detailed task work.

AR 25.

In making the RFC determination, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "the medical opinion(s) and prior administrative medical finding(s)." AR 25. The ALJ considered Plaintiff's subjective symptom testimony at the hearing and found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms. *Id*. The ALJ further concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record." *Id*. at 26. In reaching this conclusion, the ALJ considered the medical evidence, including observations and findings by clinicians based on physical examinations, MRI scans, and Plaintiff's statements to medical staff regarding his various conditions. *See generally id*. at 26-29. The ALJ also considered Plaintiff's enrollment in and completion of junior college coursework in December 2021 as part of Plaintiff's plan to "switch careers" and "get certified in radiology," as well as Plaintiff's testimony that he "has a driver's license and drives." *Id*. at 29. Specifically, the ALJ concluded that Plaintiff's "academic pursuits are not consistent with his allegation that he cannot perform any work." *Id*.

Additionally, the ALJ considered, but did not completely adopt, the medical opinions and prior administrative medical findings of S. Laiken, M.D., and G. Williams, M.D., both of whom are medical consultants at the California Department of Developmental Services. The ALJ found the medical consultants' opinions to be "generally persuasive because they supported their opinions with detailed narrative

8

explanations and their opinions are consistent with the objective medical evidence in the record as a whole." AR 29. However, because the ALJ imposed *more* restrictions on Plaintiff's RFC than the medical consultants recommended, the ALJ did not "completely adopt[] the prior administrative findings and opinions of these two doctors, but rather has included additional and/or more restrictive restrictions that are supported by the totality of the evidence." *Id*. at 29-30.

Finally, the ALJ noted that "there are *no* treating medical sources in the record opining the claimant has disabling limitations." AR 30 (emphasis in original). Furthermore, the ALJ noted a "reference in the record to 90 percent service-connected disability by the Veterans Administration," but concluded "this finding is not persuasive and is given no weight, as the VA has different standards of review than the Social Security Administration for determining disability." *Id*.

At step four, the ALJ concluded that Plaintiff is unable to perform any of his past relevant work as a marine engine technician who, according to Plaintiff's testimony, "needed to lift up to 100 pounds of weight." AR 30. A vocational expert testified at the hearing that a marine engine technician's work is classified as "medium exertion according to the [Dictionary of Occupational Titles], but performed at heavy." *Id*. Given the ALJ's RFC determination and the restrictions the ALJ imposed as a result thereof, the ALJ found the demands of Plaintiff's prior work as a marine engine technician exceed Plaintiff's RFC. *Id*. Therefore, the ALJ concluded Plaintiff was unable to perform past relevant work. *Id*.

At step five, relying on the testimony of the vocational expert that an individual of Plaintiff's age, education, work experience, and RFC could perform the requirements of occupations that exist in significant numbers in the national economy, the ALJ concluded that Plaintiff was "not disabled" under the Act. AR 30-32. The ALJ noted that Plaintiff was 50 years old on the alleged disability onset date and has at least a high school education. *Id*. at 30. Plaintiff's RFC placed him within the "light work" exertional level, but the ALJ noted that Plaintiff's "ability to perform all or substantially all of the requirements of this level of work had been impeded by additional limitations." *Id*. at 31.

9

Therefore, the ALJ heard testimony from the vocational expert regarding the range of jobs available in the national economy that a person of Plaintiff's age, education, work experience, and RFC could perform.  *Id.*; *see* 20 C.F.R. Part 404, Subpart P, Appendix 2. Taking into account that certain limitations of the established RFC are not covered by the Dictionary of Occupational Titles and instead require reliance on professional knowledge and experience, the vocational expert testified that such available occupations include a zipper ironer, bakery worker, fruit distributor, or school bus monitor.  AR 31.

On March 13, 2023, the Appeals Council denied Plaintiff's request for review and the ALJ's written decision became final.  *Id.* at 6-11, 20-32; *see* 42 U.S.C. § 405(h).  This action followed.

## II.

## ISSUES PRESENTED

The issues presented are as follows:[5]

1.  Whether the ALJ properly declined to consider the VA disability rating; and

2.  Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony regarding migraine headaches.

*See* Dkt. No. 13 at 2.

## III.

## STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is "highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023).[6]  The Court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial

---

[5]      In framing the legal issues presented in the Motion, Plaintiff asserts: "The ALJ harmfully erred by failing to discuss the 90% VA Disability Rating," and "[t]he ALJ harmfully erred by failing to provide clear and convincing evidence to reject migraine headache symptomology."  Dkt. No. 13 at 2.

[6]      All citations, internal quotation marks, and subsequent history are omitted unless otherwise noted.

23-cv-799-DDL

evidence." *Id*. "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Id*.

This Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id*. Moreover, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id*. If the evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. *See id*. at 1115-16. However, the Court cannot affirm "on a ground upon which [the ALJ] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

Where the ALJ commits legal error, the Court may affirm the decision if the error is harmless, meaning that "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

## IV.

## DISCUSSION

### A.   The ALJ Properly Declined to Consider Plaintiff's VA Disability Rating

Plaintiff contends the ALJ harmfully erred by "merely mentioning, but failing to properly discuss in any detail or provide analysis regarding the fact that Mr. Johnson had a 90% VA disability rating." Dkt. No. 13 at 15. Plaintiff further asserts the ALJ erred because the ALJ "'did not address how she had considered and weighed the VA's rating or articulate any reasons for rejecting it.'" *Id*. at 16 (quoting *Luther v. Berryhill*, 891 F.3d 872, 877 (9th Cir. 2018)). However, the current regulations, which took effect on March 27, 2017, and apply to all disability applications filed on or after that date, "removed any requirement for an ALJ to discuss another agency's rating." *Kitchen*, 82 F.4th at 739; *see* 20 C.F.R. §§ 404.1504, 404.1520b(c)(1). "[T]he regulations now explicitly state that

Social Security will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency, . . . and that such decisions are inherently neither valuable nor persuasive." *Kitchen*, 82 F.4th at 738-39 (citing 20 C.F.R. § 404.1504). Here, the current regulations control.

Although Plaintiff concedes in his reply brief that the current regulations apply to this case, Plaintiff maintains that "the ALJ has a duty to consider the evidence that supports the ratings decision." Dkt. No. 18 at 2. According to Plaintiff, the ALJ's failure to discuss the evidence supporting the VA's 90% disability rating, including medical opinions in the VA disability report, was harmful error.

The Court notes that while Plaintiff merely stated in the MSJ as a matter of fact that the ALJ did not discuss the VA's disability report, Plaintiff only raises this as a discrete argument for the first time in the reply brief. *See* Dkt. No. 13 at 17; *see also* Dkt. No. 18 at 2. Plaintiff's argument is improper because "a moving party may not raise new arguments in a reply brief." *Canseco v. Ford Motor Co.*, 570 F.Supp.3d 872, 903 (S.D. Cal. 2021). But even if Plaintiff had properly raised this argument in the Motion, the Court finds it unpersuasive because the ALJ was not required to explicitly address every item of evidence in the record. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (noting that "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence").

For the foregoing reasons, the Court finds the ALJ applied the correct legal standards and did not err by foregoing discussion of the VA's disability rating.

**B.**   **The ALJ Did Not Provide Clear and Convincing Reasons for Discounting Plaintiff's Subjective Symptom Testimony**

*1.*   *Ninth Circuit Requirements for Consideration of Symptom Testimony*

"[T]he credibility determination is exclusively the ALJ's to make, and [the Court's] only to review." *Brown-Hunter*, 806 F.3d at 494. In assessing whether to credit a claimant's subjective testimony regarding their functional limitations, the ALJ follows a two-step process. "First, the ALJ must determine whether the claimant has presented

23-cv-799-DDL

objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024). When a claimant satisfies the first step, and absent any evidence of malingering, "the ALJ can reject the claimant's testimony . . . only by offering specific, clear and convincing reasons for doing so." *Id*.; *see also Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022) ("[A]n adverse credibility finding must be based on clear and convincing reasons."). The Ninth Circuit has explained that "the 'clear and convincing' standard . . . requires an ALJ to show his work." *Smartt*, 53 F.4th at 499. Requiring an ALJ to support their credibility determination with specific findings enables the reviewing court to determine whether the ALJ "arbitrarily discredit[ed] [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *accord Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (noting that "the ALJ must provide sufficient reasoning" to "permit meaningful review").

Although the "clear and convincing" standard applicable to the credibility assessment of a claimant's subjective symptom testimony is not new, the Ninth Circuit recently clarified the standard in *Ferguson*. There, the claimant testified that he "experiences headaches that last up to two days, two or three times a week, and that the headaches cause pressure so intense that he cannot leave his room." *Ferguson*, 95 F.4th at 1198. Notwithstanding the claimant's testimony, "the ALJ discounted Ferguson's testimony regarding the severity and frequency of his headaches when assessing his RFC," leading the ALJ to conclude that sufficient jobs existed in the national economy that the claimant could perform, and that the claimant therefore was not disabled. *Id*. The district court affirmed the ALJ's decision, but the Ninth Circuit held that "the ALJ erred by improperly discounting Ferguson's headache symptom testimony." *Id*. at 1199. The Ninth Circuit reversed the district court's judgment with instructions to remand the case to the ALJ for further consideration of the claimant's testimony regarding his headache symptoms. *Id*. at 1204.

/ / /

23-cv-799-DDL

The *Ferguson* court determined the ALJ erred at both steps of the subjective symptom analysis. At step one, the court determined, "the ALJ did not specify which symptoms [the claimant's] medically determinable impairments could reasonably be expected to cause." *Id*. at 1200. However, prior to rejecting the claimant's subjective symptom testimony, the ALJ determined "there was objective medical evidence of Ferguson's headaches sufficient to establish them as a severe impairment at step two of the five-step disability analysis," which was sufficient for the court to find that "the ALJ impliedly found that Ferguson's medically determinable impairments could reasonably be expected to cause his headaches." *Id*. Thus, the court determined "the ALJ was required to move to step two of the symptom analysis." *Id*.

At step two of the symptom analysis, the court determined the ALJ improperly rejected the claimant's testimony regarding the severity and frequency of his symptoms by failing to provide "specific, clear, and convincing reasons" that explained why the ALJ rejected the claimant's testimony. *Id*. at 1199. Specifically, the court found error where "the ALJ failed to specify *which* of Ferguson's many symptoms were, in the ALJ's view, inconsistent with the record evidence." *Id*. at 1200 (emphasis in original). The court explained:

> [T]he ALJ never expressly and specifically stated that Ferguson's *headache* symptom testimony was inconsistent with any particular record evidence, as it was required to do. In the symptom-testimony discussion, the ALJ specifically mentioned Ferguson's headaches only once: The ALJ stated, "upon exam in September 2017, despite continued reports of headaches, the claimant had no neurological deficits with full strength throughout, as well as, a normal mood and affect." We infer from the statement that the ALJ found Ferguson's headache testimony to be inconsistent with the results of his September 2017 exam. But an exam showing "no neurological defects" and a "normal mood," at best, provides a reason to discount Ferguson's testimony about his neurological deficits and mood. The ALJ did not explain, and we do not see, how the absence of neurological defects and a normal mood during a medical exam are inconsistent with Ferguson's testimony about the severity

and frequency of his headaches.  For example, the ALJ did not identify any evidence indicating that Ferguson cannot experience severe and frequent headaches in the absence of neurological defects. And as we have repeatedly held, at step two of the symptom analysis, the ALJ cannot rely on an *absence* of positive medical evidence to discredit a claimant's subjective symptom testimony.

*Id*. at 1200-01.  Thus, under *Ferguson*, an ALJ must identify medical evidence in the record that is inconsistent with a claimant's subjective symptom testimony and "provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony."  *Id.* at 1200 (emphasis in original).  An ALJ may not rely on a claimant's failure to provide affirmative evidence of the severity and intensity of symptoms to support a negative credibility determination. *See id*. at 1201.

The *Ferguson* court also clarified standards applicable to ALJs' findings regarding a claimant's activities of daily living.  The court reiterated its admonition from *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014):

ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.

*Ferguson*, 95 F.4th at 1203.  Despite the claimant's symptoms, the ALJ in *Ferguson* found the claimant was able to perform "some degree of sedentary, simple work" based on the ALJ's review of the claimant's activities of daily living.  *Id*.  The ALJ provided examples of the claimant's daily activities, which included "watching television and playing video games, help[ing] care for his mother's wild cats, prepar[ing] simple meals, going out to his shop to work on projects (such as a model house), and walk[ing] every now and then," as well as "attend[ing] to basic self-care" and "driving a vehicle." *Id*.  But the Ninth Circuit held the ALJ erred because "the ALJ did not explain how, in his view, Ferguson's testimony about those daily activities is inconsistent with his testimony about the severity

/ / /

and frequency of his headaches. . . . Ferguson can both do nothing when he has severe headaches and engage in his daily activities when he does not." *Id*.

### 2.   *The ALJ's Analysis of Plaintiff's Symptoms*

In assessing Plaintiff's subjective symptom testimony regarding his headaches, dizziness, and strokes, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record." AR 26.  Specifically, with regard to Plaintiff's "migraines, vestibular system disorder, and stroke" the ALJ concluded that "physical examinations by treating medical sources fail to support the claimant's allegations of disabling limitations." *Id*.

The ALJ pointed to Plaintiff's physical examination treatment records reflecting Plaintiff's self-reported symptoms.   For example, during a January 2021 physical examination, Plaintiff "reported having daily headaches" and also reported a history of headaches starting in the 1990s while Plaintiff was working. *Id*. at 26-27.  The ALJ noted these reports were consistent with Plaintiff's testimony regarding a long history of headaches, but also that Plaintiff "testified to the headaches becoming more intense over the last few years." *Id*. at 27.  The ALJ also noted Plaintiff's report that he "experienced vertigo after his stroke in May 2020, but reported that this symptom was improving." *Id*. The ALJ also noted that during a telephonic neurological consultation on April 21, 2021, Plaintiff "reported having daily headaches and occasional vertigo, especially in hot weather and when he was exerting himself." *Id*.  The ALJ further noted an October 6, 2021, follow-up stroke treatment appointment in which Plaintiff reported "he had no spells or [transient ischemic attack] since his last medical consultation." *Id*.  The ALJ pointed to a November 17, 2021, neurological consultation during which Plaintiff told Dr. Claire Davila, M.D., "he was having only 2-3 headaches per week, down from daily as reported in January 2021." *Id*. The ALJ also noted a telephonic neurological consultation on

/ / /

December 23, 2021, in which Plaintiff "reported continued frequency of headaches of twice per week and no other new neurologic complications." *Id.*

The ALJ also referred to records describing clinicians' observations based on their physical examinations of Plaintiff. Specifically, the ALJ referenced a note by neurologist Leena Kansal regarding a "30 day neurological event monitor [that] showed no abnormalities." AR 27. The ALJ also referenced a July 28, 2021, neurological consultation in which nurse practitioner Andrea Bianco "reported [Plaintiff] was alert and oriented as to person, place, and situation and found no neurological deficits and reported [Plaintiff] had good gait stability and coordination." *Id.* Additionally, the ALJ pointed to a September 17, 2021, brain MRI which "showed overall unchanged appearance of a small, approximately 2 mm right superior hypophyseal-type aneurysm versus infundibulum," as well as a neurological examination on the same date which indicated Plaintiff "had clear speech and appropriate response." *Id.* With respect to the November 17, 2021, neurological examination by Dr. Davila, the ALJ also noted Dr. Davila's observations that Plaintiff was "alert, cooperative, attentive, fluent, following commands without difficulty," that Plaintiff had "no facial droop, visual fields full to confrontation, sensation to light touch intact bilaterally," that Plaintiff's "sensation was intact to light and temperature, except in the lower left extremity which was numb," and that Plaintiff showed "some left sided ataxia and dysmetria on finger to nose." *Id.*

Finally, the ALJ noted Plaintiff's daily activities. For example, Plaintiff "reported he had returned to school," which was consistent with Plaintiff's testimony "that he was planning on switching careers." AR 27. Furthermore, the ALJ noted that during Plaintiff's July 28, 2021, appointment with Andrea Bianco, "Ms. Bianco also reported [Plaintiff] was able to feed himself, manage bowel/bladder, and perform self-care." *Id.* The ALJ also noted Plaintiff's testimony that he "has a driver's license and drives." *Id.* at 24, 26, 29.

/ / /

/ / /

/ / /

1       3.    *The ALJ Did Not Provide Clear and Convincing Reasons for Rejecting*

2                  *Plaintiff's Subjective Symptom Testimony*

3            "[T]o satisfy the substantial evidence standard, the ALJ must provide specific, clear,

4    and convincing reasons which explain why the medical evidence is *inconsistent* with the

5    claimant's subjective symptom testimony." *Ferguson*, 95 F.4th at 1200 (emphasis in

6    original). Here, although the ALJ identified examples in the medical record of symptoms

7    Plaintiff self-reported to clinicians, the ALJ did not provide clear and convincing reasons

8    to explain why this evidence of Plaintiff's self-reported symptoms is inconsistent with

9    Plaintiff's subjective symptom testimony at the hearing. For example, the ALJ did not

10   explain why Plaintiff's testimony about his headaches intensifying in recent years was

11   inconsistent with records reflecting not only that Plaintiff has a long history of headaches,

12   but that the headaches he experienced at the time of the medical appointments referenced

13   in the record occurred multiple times per week and lasted up to a full day. Furthermore,

14   the ALJ noted the differences in frequency of headaches that Plaintiff reported to clinicians

15   in January 2021 ("daily") and November 2021 ("2-3 headaches per week") in contrast to

16   Plaintiff's testimony at the hearing ("three or four times a week"). Even if there is variation

17   between the number of headaches Plaintiff reported to medical staff and the number of

18   headaches Plaintiff stated in testimony, the ALJ did not explain why such fluctuations

19   undermine Plaintiff's testimony or are otherwise not supported by the medical evidence.

20   The ALJ also did not explain any inconsistency between Plaintiff's report of improving

21   vertigo in January 2021 and subsequent testimony about ongoing dizziness episodes.

22   Additionally, although the ALJ's conclusion discounted Plaintiff's testimony regarding the

23   intensity of his headaches and vertigo, the ALJ did not specifically discuss this testimony

24   or cite contradictory medical evidence.

25           The ALJ also did not explain how the presence or absence of certain symptoms as

26   observed by the clinicians was inconsistent with Plaintiff's subjective testimony regarding

27   the intensity, persistence, and limiting effects of his headaches and dizziness. *See*

28   *Ferguson*, 95 F.4th at 1200-01 ("[T]he ALJ cannot rely on an *absence* of positive medical

evidence to discredit a claimant's subjective symptom testimony.").  For example, with respect to Dr. Kansal's note that "a 30 day neurological event monitor showed no abnormalities," the ALJ did not point to any evidence that Plaintiff's headaches or dizziness cannot occur in the absence of neurological abnormalities.  In fact, the ALJ did not address *any* details of the event monitor which support or contradict Plaintiff's testimony.  Additionally, the ALJ pointed to clinicians' observations regarding Plaintiff's alertness, coordination, gait, speech, and sensation to various stimuli, as well as the absence of neurological deficits and facial droop.  However, the ALJ did not explain how these factors are relevant to assess the subjective intensity, persistence, or limiting effects of Plaintiff's headaches and vertigo or how these observations are inconsistent with Plaintiff's symptom testimony.  For example, Plaintiff's testimony indicated that his headaches are episodic and occur three to four times per week, but the ALJ did not address how that frequency of occurrence affects a clinician's ability to observe Plaintiff's symptoms in real time during a single visit.  Moreover, although the ALJ noted Dr. Davila's findings of numbness in Plaintiff's lower left extremity and "some left sided ataxia and dysmetria on finger to nose," the ALJ did not explain whether and how these observations are inconsistent with Plaintiff's symptom testimony.  *Id*.

*Ferguson* also directs ALJs to provide "specific, clear, and convincing reason[s]" for any perceived inconsistency between a claimant's subjective symptom testimony and daily activities.  *See Ferguson*, 95 F.4th at 1203.  Here, the ALJ determined that Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms . . . are inconsistent with his enrollment and completion of courses in junior college, apparently as part of his plan to switch careers."  AR 29.  The ALJ cited Plaintiff's testimony that he "passed the physics and political science classes, but did not pass the biology course," and also noted that Plaintiff "has earned about 12 credits since he stopped working."  *Id*. Although the ALJ stated that Plaintiff did not enroll in additional coursework in part because "he was having problems due to memory issues," the ALJ did not discuss Plaintiff's testimony attributing memory issues to his inability to pass the biology course.

*Id.*; *see id.* at 58.  The ALJ also did not address Plaintiff's testimony that he "just barely" passed the physics and political science classes.  The ALJ relied solely on the fact of Plaintiff's academic pursuits to support a finding that such activities are "not consistent with his allegation that he cannot perform any work," but the ALJ did not reconcile this finding with Plaintiff's testimony regarding his subjective performance in the classes and the concerns that led him to forgo further coursework.  Furthermore, although the ALJ cited Plaintiff's testimony that he "has a driver's license and drives" multiple times and found this activity inconsistent with Plaintiff's symptom testimony, the ALJ did not explain how Plaintiff's testimony about driving "is inconsistent with his testimony about the severity and frequency of his headaches."  *Ferguson*, 95 F.4th at 1203.

If the ALJ does not provide sufficient reasons for rejecting the claimant's testimony, "then the ALJ's [credibility] determination is not supported by substantial evidence." *Ferguson*, 95 F.4th at 1199.  The Court finds the ALJ did not provide specific, clear, and convincing reasons for rejecting or discounting Plaintiff's subjective testimony regarding the intensity, persistence, and limiting effects of his headache and dizziness symptoms.[7] Therefore, based on the record before this Court, substantial evidence does not support the ALJ's RFC assessment with respect to Plaintiff's headache and dizziness symptoms.  This finding is limited to the ALJ's assessment of Plaintiff's migraines and vestibular system disorder and does not affect the ALJ's RFC assessment with respect to any of Plaintiff's other impairments or the ALJ's determination of non-disability.

---

[7]     In addition to the ALJ's failure to provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony, the Court also notes the ALJ did not address the vocational expert's testimony that under any circumstances, Plaintiff's need to be off-task for more than 15% of a work schedule due to "his need for additional breaks due to his headaches" constitutes "inappropriate work characteristics" which would make him "non-sustainable as an employee."  AR 65.  This testimony goes directly to the ALJ's RFC analysis and, in turn, to the ALJ's determination that Plaintiff is not disabled and "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  *Id.* at 32.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**4.**    *The ALJ's Failure to Provide Clear and Convincing Reasons for Rejecting Plaintiff's Symptom Testimony Was Not Harmless Error*

An error is harmless if "it is inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter*, 806 F.3d at 494.  When an ALJ fails to provide specific reasons for finding a claimant's testimony not credible, "a reviewing court will be unable to review those reasons meaningfully without improperly substitut[ing] our conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions." *Id*. at 492.  Because district courts are prohibited from engaging in such substitution or speculation, "such error will usually not be harmless." *Id*.

Here, ALJ's error was not harmless.  The ALJ did not provide sufficient explanation of the reasons for discounting the Plaintiff's testimony to enable this Court to meaningfully review the decision without speculation.  "[W]e cannot discern the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons" as to why Plaintiff's testimony was not credible.  *Id*. at 494.  Thus, the ALJ's failure to provide clear and convincing reasons for discounting Plaintiff's symptom testimony was not harmless error.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

23-cv-799-DDL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. The final decision of the Commissioner is hereby **REVERSED**. The Court **REMANDS** the matter to the Social Security Administration for further proceedings. On remand, the ALJ must evaluate Plaintiff's testimony concerning his migraines and vestibular disorder and issue a decision consistent with the applicable legal standards set forth in this Order.

**IT IS SO ORDERED.**

Dated: May 15, 2024

_____
Hon. David D. Leshner
United States Magistrate Judge

23-cv-799-DDL